Good morning, Your Honor. Excuse me. Dan Guerrero is my name. I'm representing here today the petitioner appellant Danny Barnes. May it please the Court, this is an appeal of a denial of a 2254 petition alleging ineffective assistance of counsel during the pretrial or plea negotiation stage of this case. Here we believe that the State Court's decision that Mr. Barnes was not prejudiced by his lawyer's failures presupposes certain facts and admits certain other facts and therefore involves an unreasonable application of Strickland v. Washington. Have you got a case where, particularly in State habeas under AEDPA, an adverse credibility finding was found to be an unreasonable application of federal law? Because that's what seems to me your big obstacle is here. Well, I don't know that there was actually credibility determination made on what I believe to be a critical fact and that is Mr. Barnes' understanding of what he was actually facing here. As the Court knows, he was offered a 36-month plea deal before trial where his exposure, if convicted on all 14 counts, amounted to over 200 months. Not one of his three lawyers, the public defender and the two that he retained later, talked to him in any specific terms about what he was facing. None of them went over the sentencing guidelines with him. Two of those lawyers specifically advised him to reject this deal. Well, but this is particularly on prejudice. I mean, all we have is his statement, I would have taken the deal if I'd have been adequately advised. And the State Courts just didn't think that was credible. Well, I mean, what we don't have here specifically that I think is important is any evidence that any three of these lawyers told him to take the deal in the face of this tremendous risk. We have to presume that what the State Court determined as to credibility is correct in the posture of this case, do we not? You do. However, I don't think that what . . . So, how do we delve back into what they, what the State Court thought or did or what they heard and so forth? Well, there was nothing inconsistent with what Mr. Barnes testified in relation to what his lawyers testified to at the post-conviction hearing. I don't know that there's this big issue of credibility. Well, but it seems to me it leaps out at you when he's got an appointed public defender telling him to take this thirty-six month deal, he says, no, I want to retain . . . I think that is, it seems to me, strong evidence that his later . . . that we're dealing with what you might call non-buyer's remorse here. Well, Judge, I don't . . . respectfully, I don't think that the record actually supports that conclusion that his public defender told him to take this deal. His lawyer conveyed the deal to him on one case several months before the trial. He then conveyed it to him again a week before the first scheduled trial date and that's when he was allowed to give, get the continuance to retain counsel, private counsel. But there's no evidence in the record that Mr. Hanroom, the public defender, told him to take this deal. He offered it to him. My client, what he testified to was that Mr. Barnes was not interested, didn't seem interested in taking a deal at that point in the case that involved prison term. I think that's not necessarily saying anything that's atypical of a case in which you represent somebody and you get a first offer that requires a prison sentence. You're here wanting us to retry the facts that were before the state court and the statute under which we operate doesn't permit us to do that, does it, counsel? I don't believe it does, Judge, and I'm not asking you to retry the facts. Well, you're reciting the facts that the appeals court, the state appeals court, dealt with and made some determinations on. I'm losing where you're going here. Well, the state court's determination that he wasn't prejudiced was based on these three factors. One, that Mr. Barnes was aware of the potential of the length of his sentence based on his own assessment of the case. Because of the testimony of the lawyers that represented him, right? Correct. And testimony of your client, right? Correct. The public defender had told him that there was a potential for a longer sentence and had done so in connection with this 36-month offer. And didn't he know at that time, as I understand it, 36 months was the minimum, statutory minimum for the most serious charge? It was a good offer, and his lawyers should have told him to take the offer. What you are telling him is that if he went to trial and lost, his exposure was 46 to 48 months. At that point, he has nothing to lose, really, by going to trial in a case like this. He knew it was 24 years. Wasn't that the statutory max? That's what he said in his sermon, and he was right, wasn't he? He said that in his sermon before he even . . . Did he just pull that number out of the air, or did he have some legal help or advice in terms of the significance of that number? His testimony was that that was the number that he obtained from the criminal complaint itself before he even had a lawyer, is when he made those statements. The complaint stated the statutory maximum? Yes. And that's in the record, that document? I don't know if it's in the record or not, but the testimony regarding where my client got that number is in the record. Okay. He had documentary evidence of the correct statutory max he was faced. Most of our jurisprudence is that's what . . . When you take a plea deal, that's what the judge has to make sure you understand. The worst that can happen is if I accept this plea, and he knew it. Sentences are . . . He said, I don't want the deal. I'm going to find a lawyer who will tell me not to take the deal. Well, I don't know that that's the record, Judge, that he wanted that. That's what the state court could reasonably have inferred, found, and concluded from this record, isn't it? What the state court did not make clear and virtually ignored is the fact that if a public defendant made him more aware of the potential sentence because he advised him of the possibility of a longer prison sentence, says nothing about whether he would have accepted that offer if he was properly advised. What was proper advice? The proper advice is to go over the sentencing guidelines with him, to tell him what he would be . . . No case says that. No federal case says that. Well, I would suggest that the Loeffler case itself talks about being properly advised as to what a sentence would be if convicted after trial. He knew that. He knew the max, and he had lawyers' opinions as to what was more likely than the max. Lawyers are supposed to advise us to that, aren't they? He advised him that if you went to trial, you would get 46 months, and he said . . . I thought he was advised that I don't see the judge going higher than . . . He said, I don't think the judge will hammer you. What are you looking at? He said, you're looking at 46 . . . That's what lawyers do. Again, where is an AEDPA case that says that lawyers have to do anything more than what is required to change a plea hearing, that you have to take the indictment, pull out your guidelines manual for the state, which is much more advisory than the federal, and go down every nuance conceivable and every ramification of . . . Well, I don't think you have to give out every ramification. No case says you have to do that. Well, I think to be an effective good lawyer, you should do that. In these . . . Depends on the client. Well, I think he wasn't informed, and when he was informed, he was getting improper advice with respect to his exposure. What was improper? Well . . . Let's not call wrong or mistaken improper. There's a big difference. Well, then he was given wrong advice. Mistaken, or he was a victim, if you want to call this, of an opinion that proved to be less than prescient. Well, I think he was deprived of essential information to make a knowing, intelligent choice. I still don't understand what that was. He knew the statutory maximum of the cumulative maximum if he was convicted on all counts. He had the lawyer's opinion. He knew what plea deal had been offered that he didn't like, and he didn't like it in part because his cohort was not going to be let go, and he finally said, you know, my assistant minister won't take a felony conviction or plea. Let's go to trial, right? That was the last . . . That was the phone message. Correct. And you're saying that it was an unreasonable application of Strickland for the state courts to say that his later remorse and assertion that I would have taken the deal in the face of that recorded phone call was unreasonable? I'm saying that the state court's application is unreasonable because they didn't consider what advice should have been given to Mr. Barnes prior to trial. He should have been told in specific terms what he was facing if convicted. What case says that? I don't have a case that says that, but there's plenty of cases that talk about ineffective assistance when you're wrongfully or misguidedly advised regarding a plea agreement. It's not just that . . . I mean, these lawyers specifically told him to reject the 36 months. Let's go to trial. We'll get a better deal midway through trial. The judge will take us back into chambers and give us a better deal. And if not, you're only looking at 46 to 48 months. So at that point, if he had been properly advised about what he was facing, he could have re-evaluated the importance of helping a co-defendant. I don't think that if he knew that he was looking at 138 months, where he . . . three to four times what he actually received, he would have been that concerned with his co-defendant actually getting the deal that he actually did. What was the maximum that he could have gotten? What could the judge . . . Well, Your Honor, as I calculated it, he could have received 284 months under the sentencing guidelines looking at consecutive sentencing because there were multiple victims in the home invasion. The guideline range was what now? 284, what was the bottom end of it? Wasn't anything that was close to 36 months in the bottom range of the guideline range? Correct. Correct. It was a favorable offer. It was a mandatory minimum. And you would think to see somewhere in the record . . . Thankfully, these jail phone calls were saved because I think you can see the dearth of his representation here. When he was told that it was a favorable plea under the circumstances, your client decided to change lawyers and find somebody else that would convince him that it wasn't? Well, no one told him it was a favorable offer. He decided to get new counsel and that was a mistake because I think they did far worse than . . . Did the offender testify that he did not take a position on the offer? He did. He didn't say that he advised him to take the offer. But I thought Hamram said that he told him he was facing a long time. He told him that he was facing 36 months plus and that it could be substantial, but he didn't tell him what that substantial was. How would he have known? Well, I figured it out and I think Mr. Hamram could have figured it out as well simply by looking at the complaint and doing a guideline calculation. After the judge gave him 138 months, it was fairly easy to figure out what he was going to get, right? Well, I'm talking about doing a guideline calculation prior to that, just looking at the complaint. These are the Minnesota guidelines, right? I'm sorry? These are the Minnesota guidelines. Correct. We're not talking about the federal. No, we're talking about the state guidelines, Minnesota state sentencing guidelines. Which are less . . . which have never been as mandatory as the federal. No, but they should still be going over with your client because that's the presumptive sentence. Is there a Minnesota case that says that in this context? I don't know that I've cited one in my brief, Judge, but if the court allows, I can take a look at that. You think there are cases that say the Minnesota guidelines are part of the plea advising process? I don't know that I've read a case that says that. Okay. Thank you, Judge. Mr. Watson? Thank you, Your Honors. May it please the court, my name is Bill Watson. I'm a Big Stone County attorney. As has been pointed out, obviously by the questions of this court, the standard under EDPA is fairly strict. I was present at the post-conviction relief hearing and the evidence presented at that hearing was determined by the court. As the trial court did indeed find that the testimony of Mr. Barnes was not credible. In looking at the federal court district court order, it's clear that basically they relied upon deference to the state court, which we are required to do under the statute and under the case law under Richter. They're supposed to defer and be deferential to the state court if the state court can make reasonable findings based upon the evidence presented in state court. Was the credibility finding, as you interpret it, limited to the I would have taken the deal or did it include his testimony regarding the advice he did and didn't get along the way? I think it's generally that he found the testimony of some of the other parties, specifically Mr. Hammond, Mr. Robinson, that their testimony is more credible than Mr. Barnes. And also in light of the fact of his sermon to the Kirkhoven parish of 24 years, his prior comments, even during the course of that post-conviction relief trial, he was mentioning the fact of the telephone call between himself and Mr. Robinson indicated 15 to 25 years that he was looking at. And the sermon was in the record. Pardon me? The contents of the sermon was in the record in the state court. Yes, that was in the record and offered in the record. And again, I think it's significant also that the judge was also aware of the fact of the procedures involved in this thing. This is the trial judge. This is the judge that was familiar with the negotiations or actually the discussions that were had. And Mr. Barnes withdrew the day before trial. He indicated he was getting other legal counsel. And Mr. Hammond had proposed that plea agreement to his client to say that he was not suggesting his client receive it when he already told his client that he's looking at substantial jail time, a minimum of 36 months because the firearm was used, and a possible two consecutive sentences based on the kidnapping and the burglary charges. It seems to me that it's hard to imagine that Mr. Hammond was not implying to his client that he should take the 36-month offer made at that time. And the fact that he got other legal counsel and was seeking other counsel, he also had another counsel if you look at the transcript of the post-conviction trial. He sought other legal counsel. And that legal counsel he basically did not retain because he didn't like what that legal counsel was telling him in terms of the likelihood of success at trial. Is it in the record that Hammond told him that 36 months was the minimum? I don't know, but it- I thought that's what you just said. I don't remember whether he did say minimum. I do know that he said because there were firearm use that that would have been the sentence he would have received if convicted on that offense alone. So presumptively that would have been a minimum if there's two possible consecutive sentences on top of that. So the position of the state is the evidence is fairly clear throughout the post-conviction evidence presented by the court. The court made adequate findings in terms of the fact that the but-for test under Strickland or Lafleur would not have to be found. That the defendant relied on other factors. Specifically, he relied upon factors that dealt with other parishioners. Specifically, he dealt with other factors that he initially indicated to his public defender he didn't know how to go to prison. Specifically, he relied on, there was some testimony of post-conviction relief that he wanted this trial for the purposes of forum to discuss his ministry. There's all sorts of things contained in the testimony of Mr. Barnes during the post-conviction relief which justifies and supports the finding of the trial court and the state court. And because it does, and because you can make that reasonable determination, it would be our position that this court and the district court was appropriate in finding that the second prong of the test was not met and therefore the writ of habeas corpus should be denied. Is there any evidence that any of the attorneys went through the guidelines with him? Well, no. There is no evidence that anyone went through the guidelines with him. You think that's deficient? Well, Your Honor, the truth of the matter is I'm not here to justify the behavior of the legal counsel involved in this case for representing Mr. Barnes. Mr. Harriman was much more attuned as to basically the potential that Mr. Barnes was looking at in terms of potential sentence. My feeling on the case based upon the testimony of the evidence is, and what Mr. Robinson testified to, is he was hired to try this case. Mr. Barnes did not want to go to prison. He clearly had a trial date the day after he talked to Mr. Harriman and he got other legal counsel. He did not want to basically suffer the consequences of the act here. And I think that that evidence is very compelling. And so if you're a lawyer representing a client who you know that client has an expectation that he wants to try the case, you probably aren't going to do or you may not do the appropriate due diligence that you're supposed to do. But that would be my expectation. Mr. Barnes is a very colorful and strong personality and I think it comes through the transcript of the, you know, he indicated in his sermon that he didn't listen to his lawyers. He indicated that in the sermons of Kirchhoff. He doesn't listen to what his lawyers tell him. And so, you know, all of that evidence added together, in my view, indicates that the state court made a reasonable determination of the facts and that the Budford test was not found. So that's all I have. Thank you. Very good. Thank you. Does Mr. Guerrero have some time? Oh, yeah. I'll give you a minute. I think we understand it. But if there's anything you would like to respond to. The, again, I'm not asking the court to make any determinations of credibility. I think those facts, I'm assuming it is what it is, the record that was made there. You say you're not asking us to make any determinations of what now? Credibility. I'm asking the court to accept the record as it is. Specifically with that regard, I put in my notes that the post-conviction court in Minnesota that we are reviewing says that based upon the transcripts and records of conversation, it makes it clear, quote, makes it clear that the reason Mr. Barnes did not accept the 36-month plea offer was because he could not get favorable treatment from Max's father, Chuck. And I think Max is your client. Is that correct? Now, with the limited . . . I think Max was the son that was rescued, so to speak. Yeah, was the son. And the father was the co . . . Codependent. So what is there in the record that would allow us to set that finding of fact aside? Well, I . . . Under the limitations we have under Edmund. And I understand that the court . . . I have an uphill battle with this standard. But I think the court needs to take a look not only at what that court made a finding of there, but also what wasn't Mr. Barnes apprised of under these circumstances. But this runs to the issue of prejudice as to ineffective assistance of counsel, doesn't it? And that's the second factor that we have. And if you . . . Not just what he was told. And I think that's where the focus should be on the prejudice. If you look at those transcripts, on a few different occasions in there, Mr. Barnes expresses a willingness to take that deal. And of course, at one point says that even if you'd consider refunding some of the funds, that I would . . . that I'll take the deal. And of course, his lawyer said there will be no refund. You've hired me to try this case, and that's what I'm going to do. And I . . . I thought after reading at the end of the reply brief, you're basically arguing with advice this bad, prejudice should be presumed. And we can . . . we can think about whether that's . . . that's Edpelaw or not. Yeah. And I would. Thank you, Judge. Thank you, Counsel. Case has been well briefed and argued. We'll take it under advisement.